

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Durwood Manford, Chairman
State Affairs Committee
House of Representatives
Austin, Texas

Dear Sir:

> Opinion Number O-5135
> Re: Do the provisions of Article
> 5, Section 49a, of the Con-
> stitution of Texas, manda-
> torily require the State of
> Texas to operate on a "cash
> basis" from and after January
> 1, 1945?

We are in receipt of your letter of March 16, 1943, which we quote, in part, as follows:

"At the general election November 3, 1942, Arti- cle 3 of the Constitution was amended by adding thereto a new section designated Section 49a which reads as follows:

"'It shall be the duty of the Comptroller of Public Accounts in advance of each Regular Ses- sion of the Legislature to prepare and submit to the Governor and to the Legislature upon its convening a statement under oath showing fully the financial condition of the State Treasury at the close of the last fiscal peri- od and an estimate of the probable receipts and disbursements for the then current fiscal year. There shall also be contained in said statement an itemized estimate of the anti- cipated revenue based on the laws then in ef- fect that will be received by and for the State from all sources showing the fund accounts to be credited during the succeeding biennium and said statement shall contain such other inform- ation as may be required by law. Supplemental

statements shall be submitted at any Special Session of the Legislature and at such other times as may be necessary to show probable changes.

" 'From and after January 1, 1945, save in the case of emergency and imperative public necessity and with a four-fifths vote of the total membership of each House, no appropriation in excess of the cash and anticipated revenue of the funds from which such appropriation is to be made shall be valid. From and after January 1, 1945, no bill containing an appropriation shall be considered as passed or be sent to the Governor for consideration until and unless the Comptroller of Public Accounts endorses his certificate thereon showing that the amount appropriated is within the amount estimated to be available in the affected funds.

" 'When the Comptroller finds an appropriation bill exceeds the estimated revenue he shall endorse such finding thereon and return to the House in which same originated. Such information shall be immediately made known to both the House of Representatives and the Senate and the necessary steps shall be taken to bring such appropriation to within the revenue, either by providing additional revenue or reducing the appropriation.

" 'For the purpose of financing the outstanding obligations of the General Revenue Fund of the State and placing its current accounts on a cash basis the Legislature of the State of Texas is hereby authorized to provide for the issuance, sale, and retirement of serial bonds, equal in principal to the total outstanding, valid and approved obligations owing by said fund on September 1, 1945, provided such bonds shall not draw interest in excess of two (2) per cent per annum and shall mature within twenty (20) years from date.'

Honorable Durwood Manford, page #3

"The import of this amendment is to place the State on a cash basis. The language of the second paragraph appears to restrict future appropriations (after January 1, 1945) to cash on hand or to revenue anticipated to be received during the succeeding biennium. Paragraph three authorizes the issuance of bonds 'for the purpose of financing the outstanding obligations of the General Revenue Fund of the State and placing its current accounts on a cash basis,'

"Assuming 'cash basis' to mean that actual cash shall be available some time within the succeeding biennium to pay items of expense for which an appropriation has been made, will you please advise this committee whether or not the provisions of Article 5, Section 49a mandatorily require the State to operate on a 'cash basis' from and after January 1, 1945?

"If the foregoing question is answered in the affirmative then we request your opinion on the following matter. There are presently outstanding against the General Revenue Fund of the State many thousands of unpaid warrants aggregating approximately $26,000,000.00. These warrants are in the hands of many widely scattered holders. For years practice and custom has been for the State Treasurer to call such warrants for payment as funds became available in their order of issuance and registration, which makes the payment of subsequently issued warrants subordinate to those previously issued. In the same manner and as a matter of right and perhaps of law the present holders of such unpaid warrants are entitled to payment ahead of warrants issued subsequent to those held by them. If, however, the State is required to go on a 'cash basis' from and after January 1, 1945 the question arises as to the future status of outstanding unpaid warrants as compared with that of warrants issued after that date. Paragraph one of the amendment

above quoted required the Comptroller in advance
of each Session of the Legislature to estimate
funds that will be available for appropriation
during such Session and for the succeeding bi-
ennium.  Our question is will the Comptroller be
required to take into consideration the total out-
standing unpaid warrants in determining the net
amount of cash that will be available for appro-
priation for the succeeding biennium?  In other
words, will the net amount available for appropri-
ation be the gross anticipated revenue for the
succeeding biennium less the total amount of war-
rants outstanding and unpaid that were issued
prior to the date of such estimate?

"For example, assume that on January 1, 1945
the General Fund Revenue anticipated for the suc-
ceeding biennium together with cash on hand totals
$36,000,000.00, and that the total warrants then
outstanding amount to $26,000,000.00, would the
Comptroller be required to deduct the unpaid war-
rants before certifying the amount of cash that
would be available, to-wit: $10,000,000.00, or
could he disregard all previously issued warrants
and certify $36,000,000.00 as the net amount avail-
able for appropriation?"

Replying to the questions submitted in the foregoing
letter we shall answer them in their order.  It is our opinion
that Article 3, Section 49a, does mandatorily require the State
to operate on a "cash basis" from and after January 1, 1945.
The people, in adopting the amendment, evidently had that pur-
pose in mind, otherwise the amendment would serve no purpose
whatever, and it will not be presumed that the Legislature in
submitting the amendment to the Constitution, and the people
in adopting it, would do a useless thing.  That the Legislature
in submitting the amendment (and the people in voting for it)
intended that the purpose was to place the State on a cash
basis is manifest from the language of the form of ballot con-
tained in the resolution (H.J.R. No.1) submitting the amend-
ment, which form of ballot for those in favor of the adoption
of the amendment reads as follows:

"For the Amendment to the Constitution of the
State of Texas, requiring appropriation bills
passed by the Legislature to be presented to
and certified by the Comptroller as to avail-
able funds for payment thereof, limiting appro-
priations to the total of such available funds,
providing for issuance of bonds to pay off State
obligations outstanding September 1, 1943, and
fixing the duties of the Legislature and Comp-
troller of Public Accounts with reference there-
to."

In construing a constitutional provision it should
be construed as it was understood by the average voter when
he cast his ballot for or against it. As said by Judge Gaines,
in Brady vs. Brooks, 89 S.W. 1052, "The voters, as a rule, are
unlearned in law and, as persons of this class would reason-
ably construe the Constitution upon which they vote, such
ought to be the construction of the courts."

Applying that rule to the meaning of Section 49a,
Article 3, the voters evidently understood that the purpose
of the amendment was to limit the authority of the Legisla-
ture to appropriate money in excess of the cash and antici-
pated revenues, or, in other words, the average voter under-
stood that its purpose was to place the State on a cash basis.

The language of the second paragraph of the amendment
is clear that no appropriation in excess of the cash and anti-
cipated revenue of the funds from which such appropriation is
made shall be valid, with one exception only, to wit, " * * *
save in case of emergency and imperative public necessity and
with a four-fifths vote of the total membership of each house
* * * ."

Section 49a imposes a duty upon the Comptroller which
requires no legislation to make it effective. It has been held
that a provision of a Constitution imposing a duty upon an offi-
cer is self-enacting. In the case of State vs. Babcock, 27 N.W.
page 98, it was contended that a provision of the Constitution

of the State of Nebraska that "no bonds, or other evidences of indebtedness, so issued, shall be valid unless the same shall have endorsed thereon a certificate signed by the Secretary and Auditor of State, showing the same is issued pursuant to law," was not self-operating, but required legislation to carry it into effect, and it was claimed that there being no such legislation, the provision remained in abeyance. The Supreme Court of Nebraska, in its opinion, said: "This rule seems to be fairly deducible from the authorities: that if the constitutional provision, either directly or by implication, imposes a duty upon an officer or officers, no legislation is necessary to require the performance of that duty."

In reply to your second question we think the Comptroller will necessarily have to take into consideration the total outstanding warrants in determining the net amount of cash that will be available for appropriation; otherwise, it would be impossible to place the State on a cash basis. If the anticipated revenues for the biennium beginning January 1, 1945, should be estimated at $36,000,000 and the Legislature should appropriate $36,000,000 the outstanding warrants would necessarily have to be paid in the order of their registration and at the end of the biennium there would be outstanding approximately the same amount of warrants as in the beginning, and the State would not be on a cash basis. The financial situation would not be changed.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By C. F. Gibson
C. F. Gibson
Assistant

CFG-a

APPROVED MAR 27, 1943

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN